**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE TO ELECT YAIDA FORD, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ACTBLUE, LLC,<br><br>*Defendant*. | Civil Action No. 26-00220 (AHA) |

**Memorandum Opinion**

Yaida Ford and the campaign committee she formed to run for mayor of Washington, D.C. sue ActBlue, LLC, a fundraising platform Ford used to raise money for her campaign. Ford and her committee allege that issues with ActBlue's systems and its failure to respond to those issues interfered with their ability to fundraise, access contributions, and meet reporting deadlines. They assert ActBlue violated D.C. consumer protection law, breached its contract with the plaintiffs, and was unjustly enriched. ActBlue moves to dismiss, arguing that the court does not have personal jurisdiction over it and that the plaintiffs have not stated a claim. The court concludes that although it has personal jurisdiction over ActBlue, the plaintiffs have not stated a claim.

## I. Background[1]

In December 2025, Yaida Ford formed the Committee to Elect Yaida Ford to run for mayor of D.C. ECF No. 14 ¶ 10. To raise money for her campaign, Ford signed up with ActBlue and used

[1] As required at this stage, the court accepts the complaint's well-pled factual allegations and draws all reasonable inferences in the plaintiffs' favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

its fundraising platform to receive campaign donations. *Id.* ¶ 17. According to the complaint, she quickly started having problems. Around one month in, the platform malfunctioned, such that her committee "was no longer receiving notifications about donations and could not access donations to fund the bank account that was opened for the campaign." *Id.* ¶¶ 17–18. And her multiple attempts to contact ActBlue went unanswered. *Id.* ¶¶ 19–20, 25, 27–28. According to the complaint, Ford's inability to access donation information during this period caused considerable harm to her campaign: She says she lost out on donations from people who could not access her campaign on ActBlue's platform during this period, *see id.* ¶¶ 45–46; missed a donation threshold that would have allowed her to receive matching funds that she otherwise likely would have received, *see id.* ¶¶ 32–34; delayed the start of her effort to collect the signatures necessary to make it onto the primary ballot, *see id.* ¶¶ 35–38; and missed a January 31, 2026, campaign finance reporting deadline, which risked "fines and penalties" for her campaign, *id.* ¶¶ 21–22, 30–31.

The complaint alleges Ford switched to a different fundraising platform, but was advised to go back to ActBlue given its familiarity with donors. *Id.* ¶¶ 52–53. When she tried to reopen her ActBlue account, ActBlue's counsel said her account had been "delisted." *Id.* ¶¶ 54, 58.

The operative complaint alleges ActBlue engaged in deceptive trade practices in violation of the D.C. Consumer Protection Procedures Act ("CPPA"); breached its contract with the plaintiffs; and, in the alternative, was unjustly enriched. *Id.* ¶¶ 65–90. ActBlue moves to dismiss the claims, arguing that the court lacks personal jurisdiction over it; that the plaintiffs cannot state a CPPA claim; and that they have not plausibly alleged breach of contract or unjust enrichment. *See* ECF No. 15 at 1–2.

## II. Discussion

The court starts with whether it has personal jurisdiction over ActBlue. The court concludes that it does, but that the plaintiffs have not stated a claim.

**A. The Operative Complaint Establishes Personal Jurisdiction Over ActBlue**

To survive dismissal under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must make "a *prima facie* showing of personal jurisdiction." *Edmond v. U.S. Postal Serv. Gen. Couns.*, 949 F.2d 415, 425 (D.C. Cir. 1991); *see also Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). A plaintiff satisfies that requirement by alleging "specific facts" upon which personal jurisdiction can be based. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983); *see also Azamar v. Stern*, 662 F. Supp. 2d 166, 170–71 (D.D.C. 2009). In assessing personal jurisdiction at this stage, the court must "accept all of the factual allegations in the complaint as true," but "may consider materials outside the pleadings." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (alteration omitted). The court resolves all "factual discrepancies appearing in the record" in favor of the plaintiff. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

The Supreme Court has generally recognized two ways a court has personal jurisdiction over a party: general jurisdiction—where the defendant is "essentially at home" and the court can hear "any and all claims" against them—and specific jurisdiction, which can be exercised over a party "less intimately connected" with the jurisdiction if there is "an affiliation between the forum and the underlying controversy." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). It's not clear whether the plaintiffs argue there is general jurisdiction over ActBlue in D.C., and the court doubts that there would be—ActBlue is incorporated and has its principal place of business in Massachusetts, and the complaint does not allege affiliations with D.C. that "are so 'continuous and systematic' as to render [it] essentially at home" in D.C. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (recognizing that a corporation is generally "at home" in its

place of incorporation and its principal place of business); ECF No. 14 ¶ 7; ECF No. 15-4 at 2; *see also Kung v. DNC*, No. 1:24-cv-03459, 2025 WL 2959718, at *2 (D.D.C. Oct. 20, 2025) ("The ActBlue defendants are incorporated in and have their principal place of business in Massachusetts.").

But the plaintiffs have made a prima facie showing of specific jurisdiction over ActBlue. Generally, specific jurisdiction involves "a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Here, the inquiries collapse: the plaintiffs rely on language in D.C.'s long-arm statute authorizing personal jurisdiction over a claim arising from the defendant's "transacting any business in the District of Columbia," D.C. Code § 13-423(a)(1), and that provision is "coextensive with the due process clause," *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981); *see also Media Matters for Am. v. Paxton*, 138 F.4th 563, 576 (D.C. Cir. 2025) (explaining that Section 13-423(a)(1) "authorizes jurisdiction to the full extent allowed by the Due Process Clause"). In assessing specific jurisdiction, the constitutional touchstone is "whether the defendant purposefully established minimum contacts within the forum." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1190 (D.C. Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). That requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quotation marks omitted).

The plaintiffs have shown that here. They allege ActBlue contracted to provide fundraising services to a D.C. mayoral campaign; took and processed payments from D.C. residents, among others, for a per-transaction fee; and disbursed those contributions to a D.C. resident and her

campaign committee. *See* ECF No. 14 ¶¶ 2, 8, 12–14, 32, 50, 71, 77–80, 87–88. In other words, ActBlue availed itself of the D.C. market. *See Nicastro*, 564 U.S. at 880. The plaintiffs' allegations also go further, indicating that ActBlue's choice was intentional—it provides its services only to certain types of candidates and campaigns, not just anyone who wishes to use its fundraising platform. *See* ECF No. 14 ¶ 4 (alleging that ActBlue provides its services to "[D]emocratic candidates and Committees and progressive nonprofits"); *see also id.* ¶¶ 17, 56–58, 61, 77 (alleging that after ActBlue initially onboarded Ford as a candidate on its platform to support her campaign, it later refused to re-onboard her). ActBlue then provides the candidate with services in support of their state or local campaign that are, by their nature, targeted at the state or locality where the candidate is running—here, D.C. *See id.* ¶ 12 (alleging ActBlue pitched itself as the right solution for "state-wide races" and "local campaigns"). So ActBlue chooses where and with whom it does business. And relatedly, the plaintiffs' suit is premised on ActBlue "causing injury" in D.C., *Ford Motor Co.*, 592 U.S. at 364—for example, by preventing potential donors from making donations to Ford's campaign through ActBlue's platform and preventing Ford from accessing donated funds and information about those donations, ECF No. 14 ¶¶ 17–18, 30–34. Together, these allegations show ActBlue "has purposefully directed [its] activities at residents of" D.C., establishing personal jurisdiction here. *Mwani*, 417 F.3d at 12 (quotation marks omitted); *see Ford Motor Co.*, 592 U.S. at 363 (recognizing that "specific jurisdiction attaches" when a company "serves a market for a product in the forum State and the product malfunctions there").

This case is therefore unlike those in which a plaintiff has tried to show personal jurisdiction "based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District." *GTE New Media Services Inc. v. BellSouth Corp*, 199 F.3d 1343, 1349 (D.C. Cir. 2000); *see also*

*Kung v. DNC*, No. 1:24-cv-03459, 2025 WL 2959718 (D.D.C. Oct. 20, 2025) (concluding there was no personal jurisdiction where a California resident sued ActBlue in D.C. because its website could be accessed here, reasoning that "the mere fact that ActBlue's website is theoretically accessible in the District would not justify haling ActBlue into court here"). Nor is it like cases where a contract was "negotiated and performed wholly outside the District of Columbia, and involved only a single, fortuitous contact with the District of Columbia." *Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004). ActBlue chose to do business with Ford, contracted to provide services for her D.C.-based political campaign, and caused Ford and her campaign committee injuries they allege were experienced in D.C. Given the nature of ActBlue's relationship to D.C. in this case, exercising personal jurisdiction is "reasonable" and consistent with "traditional notions of fair play and substantial justice." *Ford Motor Co.*, 592 U.S. at 358.

### B. The Plaintiffs Have Not Stated A Claim

To survive dismissal for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Each of the plaintiffs' three claims must be dismissed under this standard.

#### *1. The Plaintiffs Do Not Allege A Consumer Transaction Under The CPPA*

The plaintiffs, first, claim that ActBlue engaged in deceptive trade practices in violation of the CPPA. ECF No. 14 ¶ 71. The D.C. Court of Appeals has said that a "valid claim for relief under the CPPA must originate out of a consumer transaction." *Ford v. Chartone, Inc.*, 908 A.2d

72, 81 (D.C. 2006); *see also Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010). When used as an adjective, the CPPA defines "consumer" to mean "anything, without exception" that a person "does or would purchase, lease (as lessee), or receive and normally use for personal, household, or family purposes." D.C. Code § 28-3901(a)(2)(B)(i). Because "purpose is the touchstone of the CPPA's definition of 'consumer,'" courts have held that transactions normally intended "to promote business or professional interests" are not "consumer" transactions. *Shaw*, 605 F.3d at 1043. Here, the plaintiffs allege Ford used ActBlue for professional aims—to run for mayor of D.C. As the operative complaint puts it, Ford's use of ActBlue was "to promote [her] business, professional, and/or political endeavors." ECF No. 14 ¶ 67; *see also id.* ¶ 1 (alleging the committee was organized for the purpose of electing Ford mayor); *id*. ¶ 66 (alleging Ford and the committee contracted with ActBlue "to collect donations in support of her local mayoral campaign"). The plaintiffs therefore do not state a CPPA claim.[2]

2. *The Plaintiffs Do Not Plausibly Allege Breach Of A Contractual Term*

The plaintiffs claim, second, that ActBlue materially breached a contract with Ford by retaining donated funds, not notifying Ford of donations, and refusing Ford's request to return the funds without charging any fees. ECF No. 14 ¶ 80. The parties both proceed on the assumption that D.C. law applies to the plaintiffs' breach of contract claim, so this court does too.

---

[2] ActBlue argues that the plaintiffs' failure to allege facts that fall within the CPPA means they lack Article III standing to assert a CPPA claim. That's not quite right. The plaintiffs allege injuries separate from any statutory violation—for example, that the malfunctioning of ActBlue's platform caused Ford to lose contributions. *See, e.g.*, *id.* ¶¶ 46–48; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). The problem is not a lack of standing, but failure to plead a claim under the asserted statutory cause of action. The court construes ActBlue's argument as such. *See Scranton Quincy Hosp. Co., LLC v. Azar*, 514 F. Supp. 3d 249, 257 (D.D.C. 2021) ("Courts in this circuit have construed Rule 12(b)(1) motions under Rule 12(b)(6) where appropriate.").

To state a breach of contract claim, a plaintiff must plausibly allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). And "to survive a motion to dismiss, a plaintiff asserting a breach of contract claim must, at a minimum, 'describe the terms of the alleged contract and the nature of the defendant's breach.'" *Pendleton v. Cap. One, N.A.*, No. 25-cv-2281, 2026 WL 1133131, at *3 (D.D.C. Apr. 27, 2026) (quoting *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015)); *see also Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (affirming dismissal of breach of contract claims where the plaintiff "[did] not point to which contractual provisions [the defendants] breached").

ActBlue argues the plaintiffs do not identify the alleged contract or contractual term that ActBlue breached, and that point is well taken. The most specific allegations the plaintiffs offer is that they paid ActBlue to "use its platform to collect donations" and "distribute those net funds" to Ford for her mayoral campaign. ECF No. 14 ¶ 77. While that allows one to infer the plaintiffs' high-level purpose and understanding of the agreement, it does not identify contractual obligations that ActBlue breached—for instance, by being unresponsive or untimely in its notifications or disbursements. Because the plaintiffs do not attach or allege contractual terms that were breached, they do not state a breach of contract claim. *See Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 125 (D.D.C. 2012) (dismissing breach of contract claim because the plaintiff "fail[ed] to identify any written employment agreement" or "indicate what any of the specific terms of that alleged contract might have been" breached); *Williams v. Amazon.com, Inc.*, No. 24-cv-3299, 2025 WL 3442580, at *3 (D.D.C. Oct. 29, 2025) (similar).

*3. The Plaintiffs Have Not Pled Unjust Enrichment*

The plaintiffs' last claim alleges ActBlue unjustly enriched itself by improperly retaining funds donated to Ford's campaign. The problem, however, is that the complaint explicitly alleges

there is a valid contract between the parties, and "there can be no claim for unjust enrichment when an express contract exists between the parties." *Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (quoting *Schiff v. Am. Ass'n of Retired Persons,* 697 A.2d 1193, 1194 (D.C. 1997)); *see* ECF No. 14 ¶ 77 (alleging a "valid contract existed" between the parties); *id.* ¶ 79 (alleging the plaintiffs "fully performed their obligations and requirements under the contract"); *id.* ¶ 87 (alleging the existence of a "terms of service agreement"). Indeed, the parties continue to agree in their briefing that there is an express agreement. *See* ECF No. 15 at 22 (ActBlue stating that "Plaintiffs' relationship with ActBlue was governed by an express contractual agreement"); ECF No. 20 at 3, 12 (the plaintiffs agreeing that there is "an express contract between the Parties"). It is, of course, true that a plaintiff may plead alternative legal theories—so a plaintiff asserting a breach of contract claim may alternatively plead unjust enrichment in the absence of a valid contract. *See* Fed R. Civ. P. 8(d); *Malvitz v. Fincantieri Marine Grp., LLC*, No. 24-cv-238, 2025 WL 1663077, at *10 (D.D.C. June 12, 2025) ("Plaintiffs cannot recover under both unjust enrichment and breach of contract theories, but appropriately plead this claim in the alternative."). But the plaintiffs do not plead that here. *See United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 160 (D.D.C. 2011) (explaining that unjust enrichment claim "must be supported by, at the very least, an allegation that there is no valid contract"). To the contrary, the plaintiffs' unjust enrichment claim expressly incorporates allegations that there is a "valid contract" between the parties without pleading any other facts that would support a claim of relief for unjust enrichment. ECF No. 14 ¶¶ 77, 83; *see also id.* ¶¶ 8, 71, 78–80.

## III. Conclusion

For these reasons, the court grants ActBlue's motion to dismiss, ECF No. 15, and dismisses this case without prejudice. A separate order accompanies this memorandum opinion.

AMIR H. ALI
United States District Judge

Date: October 19, 2026